Lassic v. United States Good morning, Your Honor. Good morning. My name is Umar. I represent the appellant in this matter. This matter was dismissed pursuant to summary judgment in the lower court. Basically the issue is that this matter was filed, purportedly filed, outside of the statute of limitations. Though this matter was filed outside of the federal statute of limitations, this was a Plaintiff's counsel argued before the lower court that the reason it was filed outside of federal actions, there was absolutely no evidence to suggest that this was a federal entity. The defendants offered some information to suggest that on the website of the entity, it indicated that it was a federal agency, but research suggested it was a 501c3 not-for-profit. There was nothing to indicate it was supposed to be treated like the post office, that the federal government would take liability for any malpractice for any of the employees there. In fact, the only- It was obvious on the website homepage, right? It was part of your declaration. What was on the website indicated that it was a 501c3 that received funding for the as far as liability, which the defendant submitted, that was sometime after the action was brought. There was some information on the website that indicated, if I may read from the defendant's own brief here, that says, as of the date of this brief and as of the date of last six and seven papers filed in district court, Hudson River's Accreditation and Recognition page indicates the following. On that page, it goes on to indicate that the federal government would accept liability for any of the actions that took place, but at the time the action was filed, there's no- The record below, that description of what's on the website. Pardon me? I'm sorry. The government's description of what was on the website. You want me- Is that in the record below before the district court? I do not recall. I do not believe so, Your Honor. Okay. Let me ask you another question. Even assuming you can take advantage of equitable tolling, you still have to submit the administrative claim within 60 days, correct? Correct. It's unclear whether, and you sent the papers to the process server on a Sunday, September 29th, and asked for service on the Monday, the 30th, right? Correct. The process server, did it mail the papers or did it hand deliver the papers? Hand deliver them. It was an affidavit of service that it was- We don't have ... The affidavit of service, it doesn't seem to be in the record. Your email is in the record, your email exchange. The affidavit of service- Unless I missed it, is it in the record? Correct. It should be 56. I'm looking at- It was submitted to the lower court. I'm looking at A57, A58, that's where the email exchange is, but I don't see the affidavit of service. Perhaps you can check while your adversary's arguing and tell us in rebuttal where it is if it's in the record, okay? Okay, Your Honor. There was an affidavit of service that it was personally- If it was mailed? No, it was personally served, Your Honor. Well, that remains to be seen, but if it was mailed, you would have a problem, right? Yes, Your Honor, but it was not. It was submitted to the lower court. It was personal service that was mailed on a- On September 30th. The Department of Health and Human Services receipt indicates October 2nd, or am I mistaken? That's what they indicate, but personal service as well as the email indicating the day he sent it to me was September- It needs something in the record that supports that, so you'll look for that and tell us where it is. Correct, Your Honor. I will, Your Honor. The court then goes on to the merits of the claim itself, indicating that plaintiff had seen the doctor for two sessions and what she alleged, the doctor's failure to diagnose the problem that she had did not amount to malpractice. In the absence of expert discovery in that matter, I thought the judge reached that question too early. It's something that couldn't be established by the papers. It would be something that would be established through testimony, medical records, and an expert evaluation of those records. I have no other statements on this. Your Honor, I'll go through the records one more time to determine whether or not it was a medical malpractice case. I'll start with the affidavit of service. Thank you. All right, thank you. May it please the Court, my name is Jacob Lilliewite. I represent the United States, the defendant, Appellee, in this medical malpractice case. First, I just want to address some of the questions Your Honor posed to my adversary. In fact, there is no affidavit of service in the record. And frankly, this is the first time either in briefing before this Court or below that I've heard a claim from Mr. Umo that there was hand delivery. Mr. Umo repeatedly in his papers both here and below represented that the papers were served on September 30th. Which could be by hand or could be by mail. Right. And in the record, the email that Your Honor was referencing at appendix page 58 has a Well, the mailing, it says we're going to mail you the affidavit of service. It doesn't say that the claim was mailed. Right, Your Honor. I would agree that the email is not clear, although we do also have in the record the receipt from HHS, which is October 2, which is consistent with mailing. Where's that? So that should be on page 40, Your Honor. Well, that doesn't specify whether it was mailed, but it does say received on October 2. Right, Your Honor. Which would suggest that it was mailed on September 30th and received on October 2. Right. And Your Honor, in the government's papers below, the government made this argument that mailing was insufficient. Ms. Lasky's attorney at that point did not argue. In fact, it was hand delivered. And didn't put in the affidavit of service. And when the court, in fact, relied on that in briefing before this court, again, Ms. Lasky's attorney did not argue in his brief that it was hand delivered or suggest that there was a missing page. Let me ask you about the website in your brief. You give a description that apparently is lifted from the website, which does make reference to the U.S. Department of Health and Human Services. Is that description in the record? It was in the government's briefing because the government initially moved for, under 12B1 and 12B6, a motion to dismiss. It hadn't attached. The only thing you cite in your brief is the web, the internet sites. Yes. There's no record sites. And what I'm asking is, was this description presented to the district court below? It was presented in our briefing in the same way. In the same way, I see. In the same manner. And in the record site, I believe. But there's no, I mean, there's no affidavit or anything that says this indeed was what the website looked like at the time in question. That's right, Your Honor. Although, to Judge Stroni's point earlier, referencing the printout in Mr. Umo's declaration at page 78 in the record, there is a reference expressly. Although, in Mr. Umo's declaration, he writes that this printout shows that there is no on page 78, the first paragraph says, we are a not-for-profit New York State licensed federally qualified health center. Does that tell the public that this is an HHS facility or that the employees are federal employees? It was federally qualified. Federally qualified is not. That's absolutely right. I would submit a few things. One, this court has previously held in AQC and in Phillips that review of the health clinic's website can be relevant in AQC. I believe the reference was only to, not even to any sort of federal tie, to underserved communities, which the court in that case said was . . . Well, this is not the only page. The prior page says it's a domestic not-for-profit corporation. It's Hudson River Healthcare, Inc. Would a reasonable lawyer or a reasonable patient looking at these pages conclude that the doctor was indeed someone you had to sue under the Federal Tort Claims Act? Two points, Your Honor. First, as we submitted in our brief, in fact, the website at the time said more than that. I just don't see it in the record. All I have is your citation without any . . . Internet pages change. We all know that. And there's nothing evidentiary to say this is what it looked like on the date in question. Well, so, Your Honor, just to be clear, so the reference there is to an Internet archive site that shows on a particular date what the website showed. But just to take Your Honor's point, and I just want to point out that this court has been very clear in AQC and Phillips that in order to establish equitable tolling, a plaintiff needs to show reasonable diligence. In addition to extraordinary circumstances, a plaintiff needs to show reasonable diligence during the period of time to be told. Looking at the website, there is nothing in the record to suggest that the website was looked at in the two years. In fact, it appears it was the time that Mr. Umo put in this declaration last year that he first looked at the website. And the only other reference is to looking at the New York Secretary of State website, which was in April of 2013, which is more than three years after both the diagnosis and the surgery here. All right. Now, we're on abuse of discretion review of the district court's decision not to apply equitable tolling. That's right, Your Honor. Now, what you're telling us is that you cited the district court to the website. And I'm just a little confused about something you said before. Is your district court citation to the website as it appeared at the time of the defendant's action? Yes, Your Honor. All right. Now, do you have—is a copy of your papers to the district court part of the record before us? Not necessarily the appendix, but it's part of the record in the case? Yes, it's part of the docket, Your Honor. Part of the docket. All right. Thank you. And I would further point to the court— Am I right that the district court didn't cite to that? It cited to the Umo affidavit. That's my recollection, right? That's exactly right. How is that reliable? Sorry? How is that reliable? The reference to the Umo declaration? Yeah. Well, I believe the district court's analysis is that there is absolutely no evidence here in the record of any diligence whatsoever during the two-year period that plaintiff seeks to toll. And I don't believe that in briefing below or briefing here, Ms. Laska is pointing to whatsoever in connection with what this court has called in AQC a fundamental duty of counsel and specifically provided that reasonable diligence during the period of time to be tolled is not simply generalized diligence, but in particular, diligence with respect to the appropriate parties to sue and any restrictions that might exist as to the time in the forum. And there is simply nothing in the record to suggest that Ms. Laska or her attorney did absolutely anything during the two-year period of time to be tolled. And I would direct the court, when the court was discussing its holding in AQC and its later decision in Phillips, it distilled that holding to say that it is clear that it is not an abuse of discretion for a court to deny equitable tolling in the instance where there was literally nothing done during the relevant period. And that is exactly this case, Your Honor. And as Your Honors noted, and I believe as Judge Chin noted, even if equitable tolling were applicable here, there is still what appears to be an insurmountable burden that cannot be met to show that, in fact, there was presentment within 60 days. But I would also remind Your Honors this is not a case simply about timeliness. This is a case where, in fact, the court reached the merits and looked at whether or not there was sufficient evidence to support a verdict in favor of plaintiff. And the doctored issue here, Dr. Kerr, from all the unrebutted evidence in the record, she did everything right. It shows that the very first time that Ms. Laska went to Dr. Kerr complaining of headaches, Dr. Kerr sent her to get an MRI. Eight days later, she got the MRI. The following morning, Dr. Kerr diagnosed the pituitary tumor, referred her to an endocrinologist. And not only that, but in fact arranged for an appointment the next day for her. When Ms. Laska then came back to Dr. Kerr five days later with worsening symptoms, she picked up the phone, called a neurologist, consulted, and immediately directed Ms. Laska to an ER. Ten days later, the tumor was removed. There's simply nothing in the record to suggest in any way that Dr. Kerr failed to comport with accepted medical practice, which is the standard that would have to be met. There's simply not evidence. And I believe my adversary noted in his argument that he agrees that there simply isn't evidence here, that he would have needed some sort of expert evidence or something else. And I would note that when the district court converted the motion to dismiss to a motion for summary judgment in May of 2015, expressly invited plaintiff to move either party to bring an appropriate motion under Rule 56D for additional discovery. And although plaintiff's counsel did in fact put in the record, you know, a declaration from himself attaching certain exhibits, he didn't request any additional time for any additional discovery. And, you know, the government submits it. On the record here, there's simply not evidence to support either the medical malpractice claim or the lack of informed consent claim or the negligent hiring claim. As Your Honors know, the district court also found for a variety of additional reasons those two other claims would fail as a matter of law. If Your Honors don't have further questions, the government respectfully requests that you affirm the district court and rest on its papers. Thank you. Mr. Umo. Thank you. Well, it has to the point that raised by the defense that there was no effort shown. Effort shown on what? Effort shown initially when the action was filed. There was a search done that showed that this was a 501c3 corporation. There was no need at that point to be impossible to anticipate, well, this is a federal agency, let me print this out because there would be some issue. From all intents and purposes, it appeared to be a 501c3 agency and the action was brought on that basis. It was only when the defendants raised this issue later on that one realized that it's a federal agency. It would be impossible early to anticipate it and print out something to indicate you had made some search. In bringing actions against what may appear to be state agencies, one does a basic search to make sure that, well, is this a state entity? Once it's found out that it isn't and isn't since the impression was that it was a private one, you simply bring the action. It would have no need. The district court thought that if you'd looked at their website, you would have seen that. And so you have to tell us why you think that was error. You're looking for equity. You're looking to have the statute of limitations told, so you had the burden to show that you could not have discovered their federal status with due diligence and the district court said you would have discovered it if you'd looked on their website. Why is that an abuse of discretion? Because most people would not believe an entity that appears on New York State Department of Corporation's website, the Department of State website as a corporation of 501C3, is simultaneously a federal agency. It says it receives federal dollars. It says it's federally qualified. It could mean a variety of things. It receives money from the government, but that these employees are federal agencies, one would not be able to indicate that simply by the language on the website. Even if we were to accept your argument on that, you have the two other hurdles, which is the filing or the service. And the government says that you never put in a proof of service. Did you find anything in the record to the contrary? It's actually Docket 25, Exhibit 2. However, it is not the physical copy. It doesn't appear to have been entered into the appendix. What is Docket 25, Exhibit 2? It's the affidavit of service from the process server, and I would ask the owner if possible if I could submit that to the court because it was submitted. No, it's on the docket. It was served as personal service on September 30, 2000. And that's Docket 25? Yes, Docket 25, Exhibit 2. So this is Docket 25 is your declaration in opposition to the motion to dismiss for lack of jurisdiction? Correct, Your Honor. And Exhibit 2 says affidavit of service? Correct, Your Honor. We have that in the record. And Exhibit 2 is the e-mail exchange without the affidavit of service. No, I understand it's not in this. Well, you've put Docket 25 into the appendix. I'm stating that that is incomplete, that there is an affidavit of service that was submitted to the lower court. And how is it that you're saying, I mean, we ought to be able to pull this document up, and you're saying we'll find the affidavit of service there? Correct, Your Honor. All right, we'll take a look. We'll take a look. And then finally, the government points out that the district court ruled against you on the merits. Do you want to say anything more on that? Otherwise, we'll rely on your papers. Yes, the district court did not give the opportunity to have, it stated that it was going to invite, it was going to convert this to a summary judgment motion, and we could submit documents in that regard. However, there was no scheduling offered in terms of discovery, expert discovery, depositions, and the rest. It was merely, it was, what was relied on was the- You needed discovery or you needed more. You had the opportunity to file your opposition to the papers? Yes, Your Honor. Did you argue in there that you needed discovery or you needed anything further? No, Your Honor. I argued actually it should not be a summary judgment motion. Did you argue to the district court that it shouldn't be a summary judgment motion? Yes, Your Honor. I don't want to misspeak. I believe so. I'm asking this because one ground on which we could affirm would be that the district court ruled against you on the merits and that we don't identify any error there, so I'm just giving you an opportunity to tell us why we shouldn't do that, why that would be why the district court did err in granting you, in granting summary judgment to the government. Well, the nature of the matter was such that it's one that could not have been decided on the papers. All right. We'll rely, we'll look at your papers on that. Thank you. We're going to take the case under advisement. Thank you both, to both sides.